All right, so we are privileged now to call the last case of this session. Case number 17-50379, Candela-Rios v. Sessions, and we'll hear from Mr. Kemme first. Thank you, Your Honor. It may please the Court. My name is Benjamin Kemme, and I'm here for Mario Candela. The trial court judgment in Mr. Candela's case should be reversed for two reasons. The first is that the trial court got the burden of proof wrong. They put the burden of proof on the wrong party, and this cannot be a harmless error. The second reason has to do with evidentiary errors in admitting the prime evidence against Mr. Candela, which was really a hearsay record and not a birth certificate as alleged by the government. I'd like to spend, though, the first part here discussing the burden with you all. The burden should have remained on the government in this 1252B5B transfer because the statute required a new hearing on the nationality claim. And as this Court rightly recognized in the Lopez case and the Marquez case, that requires a de novo hearing as to that issue. And when the fact issue of nationality is this jurisdictional question of whether the deportee is an alien to begin with, we know from the Supreme Court's precedent in Woodby that that is an issue on which the government must carry the burden, and it must carry the burden by clear, convincing, and unequivocal evidence. This is a very important issue and complex legally. You didn't file a reply brief. That's very difficult when there are citations made by the government that you, therefore, haven't given us insight into. And I'm thinking particularly the De Vargas opinion from our Court and then your principle brief discussion of Medtronic, which seems to me to be central, is in a footnote. So maybe start with do we have problems? Not problems. Are we bound by De Vargas? Yeah, and in De Vargas, Your Honor, it's the case from the 1950s, if I recall correctly. In De Vargas, it's factually very similar. It looks very similar. The difference is that in De Vargas, the alleged deportee brought the claim under a different statute. I think it's 1503A. Congress, of course, later changed the statutory framework with the passage of the Real ID Act in 1250, U.S.C. 1252. And I think that that is one reason why it's different. The second reason is that De Vargas was decided before Woodby. And so when— That's a substantial offering to us now if your argument at the podium is that we should construe De Vargas to have been abrogated by Woodby and or Medtronic. Is that your principle argument?  Well, I would say, Your Honor, that the statutory framework for De Vargas just doesn't quite apply to this case because De Vargas is really still a 1503 case where the deportee independently brings this claim for a declaration of nationality. And the government's brief kind of cites a whole host of those cases. Right. The passport cases, for example. These also are, you know, so many different Mr. Marbury's asking so many different Mr. Madison's. So whenever benefit — so burden follows benefit, you're not — you're not saying De Vargas is abrogated. You're saying it's distinguishable. Yes, Your Honor. I think it is distinguishable on the basis of the statutory procedure, and that this new statute was enacted after Woodby. Congress knew what a new nationality hearing at the district court would have meant. And I think that we have to assume that they wrote that statute with Woodby in mind, that where the genuine issue of fact on nationality is alienage, that the district court — So if we're free to look past De Vargas, are you embracing the Ninth Circuit en banc approach? I think that, yes. And I think the Ninth Circuit en banc approach is correct because it puts the ultimate question, the ultimate burden, on the government as opposed to the petitioner. I think that, you know, a circuit could come up with, you know, different kind of procedural steps if they wanted to. But ultimately the question is if there is substantial credible evidence that the person is a United States citizen by birth, well, then the government must carry the burden of alienage by clear, convincing, unequivocal evidence. And again, I don't want to ask too many questions, so obviously defer to others. But could you spell out the significance of Medtronic? Right. Because you put it in a footnote. The government, unless I'm mistaken, didn't even acknowledge it. I would have thought it would be very significant here. And I think it is very significant, Your Honor, because what Medtronic stands — the proposition it stands for is that the Declaratory Judgment Act is procedural. And it does not change the substantive rights of the parties with respect to burden. Burden is a substantive — it belongs to the substantive aspect of the claim. And so for the government to say, well, Mr. Candela should have had the burden as if he had brought this case under 1503A or a declaratory judgment, you know, for the court to declare his citizenship, misses the point with respect to what the Supreme Court said in Medtronic, because that doesn't matter who procedurally moves for it. The question is, where does the burden lie substantively? You know, substantively, where is — Has any circuit put the burden on the Petitioner in a birthright citizenship case? I found no case that has, Your Honor. And of course, you know, I really scoured. I would say that the government's brief cites a case from Waipungu out of the Eighth Circuit. And there it's not just passing dicta. The court did adopt the Mundaka-Vega framework. So I think the suggestion that, you know, the Ninth Circuit is on its own on this is incorrect. But I think that the burden issue, whether it's initially on the Petitioner or on the Petitioner after substantial credible evidence, is met in both — is met both ways in this case, because obviously the court viewed the Petitioner's birth certificate as substantial credible evidence when it said in its amended judgment that Mr. Candela had made a prima facie case for his birthright citizenship. And so then — Well, I would argue at the district court's statement that the Petitioner has repeatedly stated often under oath that he was born in Mexico. I do not. How — regardless of where the burden is, why doesn't that end the story? If he told Mexican authorities he was born there, then when he comes into the U.S., he says he was born in Mexico. When he's being removed from the U.S., he says he was born in Mexico. When he's asking for asylum, he says he's from Mexico. I would have thought that he sort of stuck with those sworn statements. Well, I would — Put aside G-1, the admissibility of G-1. Sure, Your Honor. And I think the reason why it's not dispositive is that one's own birth — you know, one's testimony about one's own birth has to be taken with a large grain of salt. As Judge Rosenthal — That's hard for me to swallow. Well — Sworn testimony about where you were born? Sure. And the reason why, Your Honors, is that — you know, I'm reminded of a story of Sir Winston Churchill. They couldn't figure — his biographer couldn't figure out which room in the house he was born in. They said one — his father said he was born in the upstairs bedroom, and his mother said no, he was born in the ladies' room. And Sir Winston laughed it off and said, you know, though I was there for the occasion, I do not remember the circumstances leading up to it. And so — Therefore, he said, I don't know. Here, this guy, to get every single legal advantage throughout his life, has said one thing until now. And to that point, Your Honor, I think as Judge Rosenthal pointed out in an opinion, Garcia v. Carey, and that's a passport case, she said the sincere belief that one is an American citizen does not make one an American citizen. I would argue that the same must be true about a sincere belief that one is not an American citizen, especially a one-time sincere belief. And so — Well, okay, let's get to the elephant in the room, so to speak. This one-time sincere belief is backed up with a birth certificate that predates the one in America. So that would seem to be a little bit different from just which room in the house was I born in. I disagree, Your Honor, that that is in the record or that is the evidence in this case. As the government stipulated on the record citation is 61, that they have no such document. They do not have a 1967 birth certificate, nor do they have a copy of one. They have some record from Mexico saying that this man was born in November 1967 in Mexico. But as the government's witness conceded on cross-examination, this could not have been created in the 60s. It would have had to have been created sometime after the 90s. And so I think that goes—but all of these questions, I believe that the testimony of my client, this purported birth record from Mexico, all of those are evidentiary questions that should be addressed under the proper burden of proof. In other words, even if, as Judge Higginson points out, the fact finder would be very concerned and view that testimony or that record as problematic, that question has to be analyzed with the burden placed on the correct party carrying the correct burden. And I—so I think that the judgment must be reversed because of the errors on the burden. If the court wants to address as well the evidentiary challenges we raised, I think it is free to do so, so that, you know, if on remand that the judge would have some guidance as to what to do with these evidentiary problems. But I think that the elephant in the room, as you called it, Judge Haynes, is still yet to be resolved. Do you think it's a mouse? Well, I just don't know, Your Honor, because—and the reason why this is important is because, as you're right,  and so it was incumbent upon the government to at least bring the original certified copy of the record that they're relying on, so that the fact— If it was their burden. Correct, Your Honor. If it was indeed—and in fact, if it was—whether it was their burden or not, if the evidence that they are depending on is this record, they should have brought the original or certified copy. Otherwise, our best evidence objections should have been sustained. Our hearsay—within hearsay objections should have been sustained. But as to the question of if it was indeed their burden, there is no question that the Texas birth certificate is a 1967 record. The government's and the trial court's assertions that it is somehow a delayed record is really without any legal citation. It is a 1967 birth certificate. It is the closest document in time to this man's birth. And so once that substantial credible evidence was admitted into the record, at least very then, the government should have assumed a burden of persuasion to overcome it. If there are no other questions, I'll save my time for rebuttal. Yeah, you reserve time for rebuttal. Thank you. Mr. Moss? Thank you, Your Honor, and may it please the Court. Benjamin Mark Moss for the Respondent at the League, the Attorney General. After a full and fair hearing, the district court found Mr. Candelarios not a United States citizen, and that finding should be upheld for three reasons. First, the district court did not abuse its discretion in admitting into evidence the contemporaneous Mexican birth certificate under a variety of hearsay exceptions, most of which are not even addressed by opposing counsel. Second, the district court did not clearly err in weighing the evidence. In weighing more heavily the contemporaneous Mexican birth registration recorded just three days after the birth by his father, more strongly than the delayed Texas registration offered 12 days after the birth it purported to record, not by his parents, not by his mother or his father, but by a midwife suspected of fraud. And there were different dates. Correct, Your Honor, different dates. The Mexican one is earlier, or earlier birth. That's correct. Which is kind of weird for a parent to go register a birth of a kid that hasn't been born. The government thinks it's a little weird as well. I mean, I guess nothing's impossible, but that would seem unlikely. Agreed, Your Honor. And that leads to the third reason, which I suspect may be the most interesting question to the Court, the issue of the burden of proof. The district court did not err in applying firmly settled Fifth Circuit precedent that a birth citizenship claimant bears the burden of proving citizenship. To address the evidentiary concerns, without waiving the fact that opposing counsel Let me just ask you on that, I mean, getting back to the whole Winston Churchill thing. I mean, I thankfully have only one birth certificate to my knowledge, and it's in America. So if someone challenged my citizenship, I'd go find that and proffer that. But I didn't have any control of that. I don't have any personal knowledge of that. All I can testify to is my parents told me I was born in XYZ in this hospital in Florida, and here's a birth certificate that says that. But if somebody popped up with a birth certificate from some other country with my name on it, I don't – how could I refute that? Your Honor, I would hate to imagine that Your Honor would be placed into removal proceedings. Yes, I would too. In a scenario where a person is confronted with an allegation that this person is not a United States citizen and there's evidence of it, they have a full opportunity to be heard. The government bears the burden in removal proceedings in the administrative context to be sure of showing alienage, slightly different from citizenship. They're overlapping but not identical showings. But the government has that burden of coming forward to show you are not a United States citizen. And at that point, if the government makes that showing in the removal proceedings, again, not where we are here in the district court, but in removal proceedings, if the government makes that showing, then the person who is alleged to not be a U.S. citizen can come back with whatever evidence the person wants. So to answer your question most directly, Your Honor, you could bring in relatives, photographs, records of your birth. That's what I was going to say is interesting in this case is while not dispositive, it would seem like one of the best ways to prove that I was born in Florida is that my father was working in Florida. They had a place of residence in Florida, and there are records of that kind of thing. Again, certainly they could have been on a cruise somewhere else. I mean, I'm not saying that that's dispositive, but one would expect something surrounding that. And we have none of that here. Exactly, Your Honor. This is why this case is not an appropriate vehicle to address the burden of proof issue. Certainly we would support the issuance of a decision clarifying it. We believe in the government's favor. But if you look at the record, there's just not a sufficient basis. I mean, they said they were working in America. It wasn't just they came over for the day and happened to deliver a baby. Right, but where are the records, Your Honor? Right, and that's what I'm saying. So you would expect, like my father was working in Florida, there's records of that. And so, again, the surrounding circumstances, if you will, support that birth certificate, support that story, et cetera. Whereas here, and I realize, again, that the work they were doing was likely different from the work my father was doing, but that's fine. You still would have something that even persons here without benefit of proper paperwork create things. They have utility bills. They have rental agreements. I mean, there are still papers that are created from living in a country, whether or not you're here, with proper paperwork. That's correct, Your Honor, and the government's discovery requested all sorts of documents like these, and none were produced. No vaccination records for the child when he was a child. He had his education in Mexico, which he conceded. He was baptized in Mexico at a young age. We just don't have the circumstantial evidence that Your Honor is referring to that makes this case even anything like a closed case. And let me also address a related point about why the burden of proof is actually not even necessary to reach in this issue, in this case. The district court amended the judgment at the petitioner's request, and in that amended judgment made a couple of additional legal findings, legal conclusions, I'm sorry. And one of them was saying that even if the Texas birth certificate was prima facie evidence of United States birth, that that prima facie evidence of United States birth was nevertheless outweighed by the remaining evidence in the record. So we have a- We know the burden of proof wasn't dispositive here as it might have been in some other case. Exactly. But if the court is interested in discussing burden of proof, we do think that that is a fully controlled issue by this court's case law. And the court's case law is kind of in several categories. There isn't a case squarely addressing which party in this circuit bears the burden of proof in a B-5 case. But we do have derivative citizenship cases that says that the burden is on the claimant. We have naturalization cases and- But there isn't a controlling one other than derivative and nationalization, which are in concept quite different because they're the petitioner's seeking the benefit. Your Honor, but the birth cases as well, which I meant to mention, De Vargas and other cases where- It's really important because you're trying to say we could do this. If we were to do this, I think we'd be creating at least one split. Is that right? No, Your Honor. The split, such as it is, already exists. Okay. What court has said the burden is on the petitioner in a birthright citizenship case? Well, I see, Your Honor, I misunderstood the question about the split. I'm not aware of any case that says that the burden is always-I'm sorry, I want to make sure I answer the question. Can you give me that question again, Your Honor? I'll phrase it this way. The argument that a person who claims that they have a birthright to citizenship still also has the burden to prove that seems very problematic. So my instinct would be we need to reach this issue to be very clear that that isn't correct. And so, therefore, I would have said that there is no circuit that's made the proposition that you're urging us to make in the context of birthright citizenship. I don't see Fifth Circuit law that controls us, at least that Post would be. If it's De Vargas, that was put in a footnote by you. Yes, Your Honor. I believe De Vargas is the case that we would rely on for that. Okay. That's a footnote. Citation. It is a footnote, and I apologize. We should have addressed it more fully, Your Honor, of course. But the principle is De Vargas was a declaratory judgment action under 1503. Okay. But right away, then, you don't discuss Medtronic, which they brought up in their principle brief. Medtronic only stands for the proposition in our context that the declaratory judgment statute is procedural and the substantive law may be separate. And the government agrees with that. But we have case law saying that in De Vargas, in the burden in that situation of birth citizenship claimant, having that burden. And that is a very similar situation to here. But we didn't have Woodby or Medtronic. Sure. But Woodby, Your Honor, addresses the burdens in removal proceedings. No, but the 1252 just says this is judicial review of a removal order. So I don't see why the burden would be on the government at the removal order, and then in de novo review, it would somehow have to flip to the petitioner. If the flip provision is purely procedural, it doesn't change burdens. There actually are a couple of responses. Yeah. Let me lead into the area we haven't talked about yet, which is the difference between citizenship and alienage. Before the removal proceedings, as we've talked about a little bit, the burden is on the government to show alienage, which is slightly different from showing citizenship. Because in an alienage showing, all the government needs to show is you are not from here. On the other hand, the B-5 statute, Congress said the question is citizenship, which is a slightly different thing. So even though there are – Woodby, for instance, does talk about alienage, we don't have a case saying that the government has to prove citizenship. But what we do have is De Vargas, which says that the birth citizenship claimant has the burden of proof. And so we believe that that precedent applies with equal force. And the Ninth Circuit, you say, is incorrect statutorily. We disagree with – yes, Your Honor. We disagree with the Ninth Circuit's transplantation of the administrative framework of alienage into the judicial citizenship question. But the government didn't disagree with that in Medtronic itself. Your Honor, I can't speak to what the government opined in Medtronic. I'm sorry. No, not Medtronic. Mondaca. Yes, actually, Your Honor, I seem to recall that our office did oppose that conclusion. Well, the conclusion on level of proof, but the government did not oppose where the burden lied. Your Honor, my recollection is different. Well, we'd have to study this closely, because if I'm correct, and I looked at it pretty closely, on cert, the Solicitor General's opinion embraced Mondaca. Have you looked at the Solicitor General's opinion in that case? I have, but, Your Honor, I perhaps do not recall it as well as Your Honor does. That would be controlling on the position you're taking here if the Solicitor General has taken a view of the statutory correctness of that case, wouldn't it be? Yes, Your Honor. We would not want to depart from the Solicitor General's views. But we do think that – I think it's still within keeping a consistent government voice to say that we don't think it was proper for the Ninth Circuit to import the administrative framework into – Okay, but let me understand. Your position is that even assuming, arguendo, we adopted the Ninth Circuit's approach, which is a burden-shifting one. Yes, Your Honor. The judge did that in the amended judgment by saying you did meet your prima facie burden. That's correct. Did it in flip, but nonetheless did it, and said now the government had the burden to come back with evidence and having – and did it. So in other words, although not framing it in the same way as the Ninth Circuit, the district court did consider the burden to be on the government and found the government met that burden. So if we're looking at the harmless error issue of whether or not the improper placement of the burden, even assuming that the burden was improperly placed, whether that made a difference, we would have to say it did not. And sometimes it does or sometimes you can't tell because the question is when there's a tie. When you're talking about preponderance of the evidence, it's a very close standard anyway. It's not like beyond a reasonable doubt. But where there's a tie, whoever has the burden of proof loses. And sometimes you don't know if the charge of fact found a tie. But here we know the judge did not find a tie because the judge said I'm putting the burden on the government to come back, and I think the Mexican birth certificate coupled with all these other affirmations of Mexican citizenship does rebut the evidence and therefore – and meets that burden. So even if it was a convoluted way the judge got there, the judge did put the burden. Is that your point? So you're saying it's harmless error even if we were to conclude the burden should have been on the government. Yes, Your Honor. Harmless error because the government – because of the burden that the district court described, even if it did – even if the district – even if this court concludes that the district court did not apply the correct burden exactly, it was harmless error because the district court found nevertheless despite prima facie evidence of United States citizenship that that evidence was overcome by countervailing evidence of Mexican citizenship. Now let me ask this. If we were to conclude that DeVargas does not govern here, it's just persuasive or whatever the right term is, what is your argument for us adopting a standard that the burden is on the party claiming citizenship in this context of the declaratory judgment establishment context as opposed to the removal context? Well, Your Honor, one argument that I would like to raise also is Sanchez v. Kerry, which is an unpublished case from this circuit, which said that there is no burden shifting. Do you think that that lends support to the concept that – It's in your brief. Yes, Your Honor. Yeah, no, that's fine. Very good. So we already know from this court that there is no burden shifting. And we have other cases from other courts. I can cite just off the top of my – I guess I'm – and I appreciate it. Cases are obviously important. If we're bound by them, we're bound by them. I guess I'm trying to say if we're riding on a clean slate, at least as far as the Fifth Circuit is concerned, what is the policy arguments? Because I think the concern is getting back to my thing and the Winston Churchill point or whatever. I don't really know, know, know where I was born because I don't remember it. And so I'm going off of a lot of very strong evidence that supports Florida. And I'm sticking with that. But if I had to prove that, what would I turn to? Birth certificates, you know, blah, blah. We've been down that path. So then you have the government saying, well, just for fun, we've decided we don't like Katharina Haynes' rulings. We're going to try to get rid of her. But we're not going to deport her. That would be too easy. We're going to just come in and take away her passport and all of these, and she's going to have to come in and file for citizenship. Then what? That seems like a – I don't know. It just seems like it has a potential for abuse. That's, I think, perhaps underscoring what Judge Higginson's point is. If it isn't, it's underscoring my concern. I think I understand, Your Honor, and this does kind of come down to what Congress chose. The policy that Congress enacted did talk about citizenship, not alienage. We have declaratory judgment actions, and I acknowledge Medtronic, certainly. But nevertheless, we don't have anything saying that the government bears the burden of proving citizenship in a citizen – I'm sorry, in a citizenship case. We have – what we have is all sorts of decisions, and we have – we know what it isn't. We know this isn't the alienage case where the government – I'm sorry, where Congress chose to put the burden on the government. Instead, it's this – I think, Your Honor, this comes back to the difference being a citizenship question versus an alienage question, and that's what Congress chose. Hmm. I miss. In any event, the government believes that the burden of proof issue is not one that really needs to control the outcome because we do have the harmless error point that even if the district court did apply the wrong burden, it ultimately also applied the correct burden and found that it was overcome. Would the court like to hear at all about admissibility of the evidence? I'm happy to address that, but I don't want to – I wouldn't, but my colleagues might. Well, Your Honor, for those reasons and as I've stated in the brief, we ask the court to please affirm the district court's decision. Okay. Thank you. Appreciate it. All right. Mr. Kami, close it out. Thank you, Your Honor. I just want to address quickly this issue of could there be harmless error if there is an error on burden, and the answer is no. As the amicus brief correctly cited, the Sullivan v. Louisiana case, that burden errors require reversal. Yeah, except here we know what the judge decided. I could understand if we didn't know. I would agree the general rule might be that, but here we know the judge said even if the burden's on the government, in essence, the government has met it, so then why would we send it back? I disagree, Judge Haynes, and the reason I disagree is because if we read the original judgment together with the amended judgment, we just cannot reach that result. In particular, I'd ask the court to look at paragraphs two and three of the original judgment, and that's on record site page 40, and then look to the court's amended judgment, I think it's paragraph six, and it's on page 46 of the record, and what I would note about those portions of the judgment is this. It was not only Mr. — the trial court did not only impose a preponderance burden on Mr. Candela. It was a preponderance plus burden, a burden to not only meet the preponderance of the evidence, but to resolve all doubt that all doubts would be resolved in favor of the government and against him. The trial court never amended that portion of the judgment, and so when he amends the judgment later on record site 46, the most plain way to read this is that he said, ah, yes, I recognize and admit your Texas birth certificate as making a prima facie case, but it is rebutted by this other evidence. But if the standard he is using, if the standard he is looking that question at is that I'm going to resolve all doubts in favor of the United States and against you, well, then it cannot be harmless if the burden is indeed on the wrong party. And so the other point I want to address is Sanchez v. Carey. The court there probably rightly recognized that there is no burden shifting when it comes to a passport. The interest in a passport case is very different than the interest in the removal context. And so, of course, it would make sense in the 1503A cases to say there is no burden shifting. This is just you present your evidence, you have a preponderance burden you need to meet, and we don't go back and forth. And I would note, however, that in those cases there's not this additional preponderance plus where all doubts are going to be resolved against you. And really the source of that is from the Bereni decision. And my final point would be that that Bereni decision, I think the Supreme Court made the dividing line, and the line is, you know, whether the shoe was on the other foot. And what the Supreme Court said about this burden that it was endorsing in Bereni is that when you have a congressionally granted citizenship, when the Congress says this is the way that you can become a citizen, there's great deference to its plenary discretion there. And so the court requires the claimant to prove their eligibility for that statutory citizenship and is going to resolve all doubts against it. That's just not the case with a constitutional birthright question. Okay. Thank you. Thank you, Your Honor. Very interesting arguments. We appreciate both sides on this. This concludes our.